RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0374p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MARGARET A. LIPKER,

                *Plaintiff-Appellee,*

    *v.*

AK STEEL CORPORATION,

                *Defendant-Appellant.*

No. 10-5298

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 09-00050—Henry R. Wilhoit, Jr., District Judge.

Argued: October 5, 2011

Decided and Filed: October 31, 2012

Before: BOGGS and McKEAGUE, Circuit Judges; GOLDSMITH, District Judge.[*]

_____

### COUNSEL

**ARGUED:** Sheryl G. Snyder, FROST BROWN TODD LLC, Louisville, Kentucky, for Appellant. John F. Vincent, MARTIN & VINCENT, PSC, Ashland, Kentucky, for Appellee. **ON BRIEF:** Sheryl G. Snyder, FROST BROWN TODD LLC, Louisville, Kentucky, Adam P. Hall, Matthew C. Blickensderfer, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellant. John F. Vincent, MARTIN & VINCENT, PSC, Ashland, Kentucky, for Appellee. Daniel J. Buckley, Glenn V. Whitaker, Mary C. Henkel, Adam C. Sherman, VORYS SATER SEYMOUR & PEASE LLP, Cincinnati, Ohio, for Amici Curiae.

      McKEAGUE, J., delivered the opinion of the court, in which BOGGS, J., joined, and GOLDSMITH, D. J., joined in part. GOLDSMITH, D. J. (pp. 14–18), delivered a separate opinion dissenting from Section II.D of the majority's opinion.

_____

[*] Honorable Mark A. Goldsmith, United States District Judge for the Eastern District of Michigan, sitting by designation.

_____

**OPINION**

_____

McKEAGUE, Circuit Judge.  When plaintiff Margaret Lipker's husband died, she applied for surviving spouse benefits under the pension benefits plan administered by his former employer, AK Steel Corporation.  Her application was granted, but her monthly surviving spouse allowance was considerably smaller than she had expected. Lipker filed suit to recover plan benefits in the amount she believed she was entitled to. The discrepancy between her expectation and the actual award hinges on the interpretation of plan language that both parties argue is unambiguous, yet each party interprets differently.  The district court approved Lipker's interpretation and ordered AK Steel to award her benefits accordingly.   On de novo review, we find AK Steel's proposed interpretation of the plan language to be truer to its plain meaning when read with reference to the law it expressly refers to.  Therefore, and for the reasons more fully set forth below, the district court's judgment for plaintiff must be reversed.

## I.  BACKGROUND

Plaintiff Margaret A. Lipker is the surviving spouse of Frank P. Lipker, a thirty-nine-year employee of defendant AK Steel Corporation at its steel production facility in Ashland, Kentucky.  Frank Lipker retired on January 31, 1999.  When he died on September 7, 2008, he was receiving a monthly pension benefit of $1,386 under the AK Steel pension plan.  Shortly thereafter, plaintiff Margaret Lipker applied for the surviving spouse benefit under the AK Steel plan.  She was advised that under the terms of the Pension Agreement Plan, she would be entitled to a monthly benefit of $693 (50% of her husband's pension benefit), reduced by 50% of her social security widow's benefit (an amount yet to be determined), but not less than $140 per month.

AK Steel made inquiry of the Social Security Administration ("SSA"). AK Steel was initially advised by form response that plaintiff's monthly widow's benefit would be $458.  This response was changed by the SSA three weeks later, stating the widow's benefit would be $1469, without any explanation for the change evident in the record.

On the basis of this corrected amount, AK Steel calculated that 50% of Frank Lipker's pension benefit, $693, reduced by 50% of plaintiff's social security widow's benefit, $734.50, resulted in a negative balance, thereby triggering the $140 minimum benefit under the AK Steel Pension Agreement, § 4.3(d).

Separately, however, plaintiff had received a statement from SSA indicating her social security widow's benefit would be $458.50, in addition to her own "earnings record" benefit of $1,010.90, thus yielding one monthly social security benefit payment in the amount of $1,469.40.  This was followed by another letter from SSA showing the widow's benefit amount to be $485 and plaintiff's retirement benefit to be $973, yielding a total monthly social security benefits payment of $1,458.  On this basis, plaintiff calculated that when 50% of the $485 widow's benefit, $242.50, was subtracted from $693, she would be entitled to a monthly surviving spouse benefit of $450.50 under the AK Steel Plan.  Plaintiff objected to AK Steel's calculation and asked for an explanation.  She received a letter explaining AK Steel's calculation (as set forth above), but not explaining the discrepancy between the different widow's benefit amounts reported by SSA.  AK Steel also sent a copy of the pertinent provisions from the Pension Agreement and directed plaintiff's attention to § 4.3(d):

> Commencing with the first Surviving Spouse's Benefit payable after the surviving spouse attains the age at which widow's or widower's benefits are first provided under a law referred to in Plan § 1.24 [e.g., as relevant in this case, the Social Security Act], the amount of the Surviving Spouse's Benefit otherwise payable for any month shall be reduced by 50% of the widow's or widower's benefit to which the surviving spouse is, or upon application would be, entitled for such month based on the law in effect at the time the Surviving Spouse's Benefit first becomes payable (*without regard to any offset or suspension imposed by such law*).  If the surviving spouse is not eligible for such a widow's or widower's benefit for such month, the amount of the reduction shall be equal to 50% of the amount of the widow's or widower's benefit that could have become payable to the surviving spouse for such month, based on the Participant's wages, if the surviving spouse had been eligible and had applied for such a benefit.

R. 12, Attach. 8, Pension Agreement § 4.3(d), p. 37 (bracketed note and emphasis added).

This was followed by a letter from AK Steel further explaining that the language italicized above, "without regard to any offset or suspension imposed by such law," represented the key to understanding the discrepancy. The letter explained that the base amount of the social security widow's benefit is derived from a calculation beginning with the deceased husband's wages. The letter further explained that *that* amount, eventually identified by SSA to AK Steel as $1,469, without any offset for any other benefit that the widow may be entitled to under the Social Security Act, is the amount that is halved in the formula set forth in § 4.3(d). Confusion, the letter implied, is caused by the SSA's use of the term "widow's benefit" to describe the *remaining* portion of the entire widow's benefit that is paid *after* offset for any other social security benefit the widow may be entitled to.

It was this practice, ostensibly, that led SSA to initially report plaintiff's widow's benefit to both plaintiff and AK Steel as $458. Hence, according to AK Steel, the $458 figure represented only the remainder of the *entire* widow's benefit, $1,469, after offset for, or reduction of, plaintiff's own old-age retirement benefit, $1,011. However, the form on which SSA was asked to disclose plaintiff's widow's benefit, consistent with the "without regard to" clause in § 4.3(d), expressly called for an amount "based on retiree's earnings only and irregardless of widow's or widower's earnings." Thus, according to AK Steel, the subsequently reported figure, $1,469, represented the correct widow's benefit amount to insert into the § 4.3(d) formula in AK Steel's Pension Agreement.

Plaintiff was not satisfied with this explanation. Insisting that SSA had reported to her that her widow's benefit was $485 and her retirement benefit was $973, she requested review by the AK Steel Benefit Plans Administrative Committee. Plaintiff's appeal was denied on May 12, 2009, based on the same reading of § 4.3(d) of the Pension Agreement and the same use of the $1,469 figure supplied by the SSA in the § 4.3(d) formula.

Plaintiff filed this action for recovery of plan benefits in the Boyd County (Kentucky) Circuit Court. Defendant AK Steel removed the action to the United States

District Court for the Eastern District of Kentucky as preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The district court addressed the matter on cross-motions for judgment and awarded judgment to plaintiff on February 24, 2010. The district court essentially adopted plaintiff's argument and held that the first disclosed widow's benefit amount of $458 was the correct figure to insert into the § 4.3(d) formula. Accordingly, the court halved that amount and subtracted $229.40 from $693 (50% of the husband's pension benefit) in holding that plaintiff was entitled to a monthly surviving spouse benefit of $463.60. AK Steel timely filed notice of appeal.[1]

## II. ANALYSIS

### A. Standard of Review

The parties are in agreement regarding the standard of review. This court reviews de novo the district court's decision reviewing an ERISA plan administrator's decision regarding plan benefits—where, as here, the plan does not give the plan administrator discretionary authority to interpret plan terms—and applies the same legal standard as the district court. *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010). Under de novo review, the court confines its review to the administrative record and determines whether the plan administrator made "a correct decision" without according the administrator any deference or presumption of correctness. *Shelby County Healthcare Corp. v. Majestic Star Casino*, 581 F.3d 355, 367-68 (6th Cir. 2009). When interpreting ERISA plan provisions, general principles

---

[1]The record is devoid of explanation for the two different sets of figures reported by SSA. SSA eventually reported to AK Steel that plaintiff's entire widow's benefit was $1,469 and implied that the originally reported amount, $458, was her remainder widow's benefit, after offset for or reduction of her old-age retirement benefit of $1,011. These figures roughly matched those originally reported to plaintiff. However, SSA eventually reported to plaintiff that her entire social security monthly benefit was $1,458 (after deduction of $96.40 for medical insurance premium), consisting of her widow's benefit of $485 and her old-age retirement benefit of $973.

The parties' arguments largely ignore this latter set of figures, although plaintiff suggests the $27 increase in her widow's benefit was attributable to a cost-of-living increase. For the most part, the parties' arguments focus on the more significant question whether the § 4.3(d) formula calls for the "entire" widow's benefit figure or the "remainder" figure. And, for the most part, both sides are content to use the $1,469/$458/$1,011 figures in presenting their arguments, as was the district court in rendering its decision, a course followed in this opinion as well. That is, for purposes of analyzing the dispositive issues, the $1,458/$485/$973 figures are essentially ignored.

of contract law apply; unambiguous terms are given their "plain meaning in an ordinary and popular sense." *Fahner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 343 (6th Cir. 2011) (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000)). Where plan language is ambiguous, extrinsic evidence may be considered to discern the purpose of the plan as the average employee would have reasonably understood it. *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006).

### B. Plan Language

The relevant plan language is confined to a single provision, § 4.3(d). *See* p. 3, *supra*. In this provision, the meaning of two terms is at issue: (a) "widow's benefit," and (b) "without regard to any offset imposed by law." On its face, neither of these terms can be said to have a "plain meaning." Yet, neither term is used in such a way as to be understood in a vacuum. Both terms are used with express reference to a law. The only law implicated under the facts of this case is the Social Security Act.

Hence, AK Steel appropriately urges us to consult the Social Security Act in ascertaining the meaning of these terms, something the district court conspicuously failed to do. "Widow's insurance benefit," as used in the Social Security Act, is defined at 42 U.S.C. § 402(e). Under 42 U.S.C. § 402(e)(2)(A), the amount of the widow's insurance benefit is initially defined as equal to the primary insurance benefit of the deceased husband. Here, it appears to be undisputed that this amount, plaintiff's husband's primary insurance benefit, at the time of death, was $1,469. However, the Act makes clear that a person who is entitled to an old-age benefit (as plaintiff is) *and* any other monthly social security insurance benefit (such as a widow's benefit, to which plaintiff is also entitled), will not receive both benefits in full simultaneously. Rather, the other insurance benefit (i.e., the widow's benefit) will be reduced by the amount of the old-age benefit (but not below zero). 42 U.S.C. § 402(k)(3)(A). That is, the Act imposes a reduction in the widow's benefit ($1,469) by an amount equal to the person's old-age benefit ($1,011), leaving a widow's benefit remainder ($458). As AK Steel points out, this subsection (k) reduction is referred to in the Act as "the method by which

monthly benefits are *offset* when an individual is entitled to more than one kind of benefit." 42 U.S.C. § 402(q)(11) (emphasis added).

With the benefit of this statutory background, the terms of § 4.3(d) become intelligible and unambiguous. It seems clear, consistent with AK Steel's position, that the "widow's benefit" amount to be plugged into the § 4.3(d) formula, "without regard to any offset imposed by law," is $1,469. AK Steel's construction and application of § 4.3(d) thus appears to be correct.

Plaintiff's arguments in support of her construction of § 4.3(d) as yielding a widow's benefit amount of $458 in spite of the light shed by the above statutory provisions are not convincing. First, she contends, regardless of the actual provisions of § 402 of the Social Security Act, that the court should adopt the SSA's interpretation of the provisions it is charged with administering. The SSA initially reported both to plaintiff and AK Steel that her widow's benefit was $458. She contends the court should accept this amount as conclusive, disregarding SSA's later correction of the amount to $1,469. She contends the corrected amount is not entitled to credence because it is the product of AK Steel's bad faith and manipulation.

The record is devoid of explanation for SSA's correction of the widow's benefit amount. This is unfortunate. Yet, our review, like the district court's, is confined to the administrative record.[2] In the present record, the accuracy of the $1,469/$458/$1,011 figures is not really in controversy. These are substantially the same figures initially reported by SSA to plaintiff in September 2008. The dispute actually revolves around determining what labels apply to these figures and how the figures relate to each other under the Social Security Act, the law referred to in § 4.3(d) of the Pension Agreement. Review of the pertinent Social Security Act provisions substantiates the correctness of

---

[2] An exception to this rule is recognized in the case of a procedural challenge to a plan administrator's decision alleging a lack of due process or bias. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 618 (6th Cir. 1998). Although plaintiff's passing accusation of bad faith manipulation by AK Steel could *arguably* come within the exception justifying expansion of the record, plaintiff appears not to have pressed the point below. Nor has she proffered any evidence to support the accusation. Moreover, and most importantly, there is no reason to believe expansion of the record would make a difference. Use of the $1,469 figure as the amount of the "widow's benefit" simply makes sense when the plan formula is viewed in light of the Social Security Act's defining provisions.

AK Steel's interpretation of § 4.3(d).  It is regrettable that imprecision in SSA communications about which figure should be labeled the "widow's benefit" may have led to unrealistic expectations in plaintiff, but this does not alter the meaning of the law or its operation in conjunction with § 4.3(d).

Second, plaintiff challenges AK Steel's application of the "without regard to any offset imposed by law" clause.  She contends the clause does not come into play because § 402(e) of the Social Security Act, defining widow's benefit, does not even mention "offset."  Plaintiff argues that AK Steel's discovery of a thread linking the term "offset" in § 402(q)(11), through § 402(k)(3)(A), defining the method of reduction that applies when a person is simultaneously entitled to multiple benefits, to identify  the meaning of "widow's benefit" under § 402(e) is too tenuous.  Yet, plaintiff's contention that "offset" is a unique term of art with a meaning distinct from "reduction" as used in § 402(k)(3)(A) is unpersuasive.  The real problem for plaintiff is that AK Steel's construction of § 4.3(d) in light of § 402's provisions is true to the law and sensible.

### C.  District Court's Analysis

Plaintiff urges the court to approve the district court's decision without regard to the Social Security Act.  Indeed, although AK Steel presented the foregoing analysis of § 402's provisions in the district court, the court ignored it.  Instead, the court relied exclusively on an unpublished interlocutory ruling by another district court construing and applying similar plan language to requests for surviving spouse benefits, *Patrick v. AK Steel Corp.*, 2008 WL 906052 (S.D. Ohio, Mar. 31, 2008).  The plan language at issue in *Patrick* is similar, but not identical:

> Commencing with the first Surviving Spouse's Benefit payable after the surviving spouse attains the age at which widow's or widower's benefits are first provided under a Public Pension, the amount of the Surviving Spouse's Benefit otherwise payable for any month shall be reduced by 50% of the amount of the widow's or widower's benefit to which the surviving spouse is, or upon application would be, entitled for such month based on the law in effect at the time the Surviving Spouse's Benefit first becomes payable (without regard to any offset or suspension imposed by such law) *and based upon the benefit payable to such person*

> *as a widow or widower without regard to any benefit earned in her own right.*

*Id.* at *4 (emphasis added). But for the italicized language, the above provision is materially identical to § 4.3(d). Unfortunately for plaintiff, the italicized language played a leading role in the *Patrick* court's reasoning.

The above provision contains two "without regard to" clauses, but the *Patrick* court did not parse them specifically or attempt to ascertain how they harmonize with or complement each other. As to the former clause, the *Patrick* court, like the district court here in *Lipker*, did not consult the law providing the claimants' public pension widow's benefits and did not inquire whether the law imposed any offset. Instead, the court focused on the latter clause and concluded "the only reasonable interpretation is that 'without regard to' . . . means to exclude any old age benefit earned by the widow or widower in her or his own right, prior to the deduction calculation." *Id.* at *5. In other words, the court construed "without regard to" as meaning "excluding" any old-age benefit from the equation.

Viewing the latter clause in isolation, the *Patrick* court's construction is not unreasonable. However, the latter clause succeeds a former clause, whose meaning seems to be directly contrary. As explained above, with reference to the very law referred to in this provision as well, the former "without regard to" clause, unlike the latter, does not exclude any old-age benefit from the equation, but actually serves to exclude any offset or exclusion of the old-age benefit imposed by law. In effect, then the former clause, by virtue of a double-negative, serves to *include* any old-age benefit in the equation. If the *Patrick* court had scrutinized the meaning of both clauses it would have confronted this apparent contradiction or ambiguity. Instead, the court side-stepped any dissonance between the two clauses by observing that its construction of the latter clause did not run afoul of the former because the exclusion effected by the latter was not imposed by law, but by the plan itself. *Id.*

What is clear about *Patrick*'s reasoning is that it is premised primarily on construction of the latter clause language, language that is absent from and materially

different from the language in § 4.3(d) of AK Steel's Pension Agreement. It follows that *Patrick* is factually distinguishable and has little persuasive value in evaluating AK Steel's determination of plaintiff's surviving spouse benefit under § 4.3(d). It also follows that the district court's exclusive reliance on *Patrick* as justification for awarding judgment to plaintiff and granting her relief was misplaced and erroneous.[3]

### D. Summary Plan Description

Finally, plaintiff contends that notwithstanding all of the above, AK Steel's decision is wrong because its construction and application of § 4.3(d) conflicts with the terms of the governing summary plan description ("SPD"). The SPD defines the surviving spouse benefit simply as "50% of the participant's pension less 50% of the amount of widow's (or widower's) Social Security benefit or, if higher, a minimum benefit of $140 per month." Thus, in relevant part, the SPD omits the "without regard to any offset imposed by law" clause found in § 4.3(d) of the Pension Agreement. This conflict, plaintiff contends, renders the clause unenforceable. The district court did not address this argument in its opinion.

Because employees rely on summary plan descriptions in making decisions about their future benefit needs, we have held that language in an SPD may control over any conflicting language in the employee benefit plan itself. *See Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 850-51 (6th Cir. 2000).[4] This does not mean, however, that an omission from the SPD will, by negative implication, be deemed to

---

[3]In holding that *Patrick* is distinguishable and therefore inapposite, we express no opinion on the merits of its reasoning.

[4]The continuing vitality of this proposition has recently been questioned as a result of *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1876-78 (2011), where the Court held that terms of an SPD cannot be enforced over conflicting terms of the employee benefit plan itself under ERISA § 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B). Per *CIGNA*, *if* there is a conflict, the plan language controls over the SPD. In other words, if we were to accept Lipker's argument that there is a conflict in this case, the holding of *CIGNA* would defeat her claim.

The *CIGNA* Court left open the possibility that "appropriate equitable relief" could potentially be awarded under § 502(a)(3). Here, however, unlike in *CIGNA*, the district court did not consider such a theory. Indeed, no such equitable theory is asserted in plaintiff's complaint, which expressly prays only for award of benefits under the "specific" and "clear and unambiguous language" of the plan.

Yet, even if the relief recognized in the *University Hospitals* case were deemed available in the event of a "conflict" between SPD language and plan language, the discussion that follows explains why it would not come into play under the facts of this case.

alter the terms of the plan itself. *Sprague v. General Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998). Silence in the SPD regarding a term the plan defines more explicitly does not make out a "conflict." *Id.* "The reason is obvious: by definition, a summary will not include every detail of the thing it summarizes." *Id.* "[W]hile a conflict exists where the summary plan description misleads or fails to state additional requirements contained in the plan document, . . . there is no conflict where the plan document clarifies the summary's general language." *Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 80 (6th Cir. 2009) (citations omitted).

Here, application of these standards makes it clear that the asserted "conflict" between the SPD language and the terms of § 4.3(d) is really nothing more than an innocuous "omission." The SPD refers to the "widow's Social Security benefit." While the SPD does not expressly state that the widow's benefit referred to is "provided under a law," as does § 4.3(d) of the Pension Agreement, the SPD's reference to Social Security implies the same meaning; it is not misleading. And when the Social Security Act, 42 U.S.C. § 402(e)(2)(A), is consulted for a definition of "widow's benefit," we find a definition equating the amount of the widow's insurance benefit with the primary insurance benefit of the deceased husband, or in this case $1,469, the same amount used by AK Steel in the § 4.3(d) formula. Thus, the SPD's omission of reference to "the law" does not result in an inconsistency.

The SPD also does not mention that this amount of the widow's benefit is used to calculate the surviving spouse's benefit "without regard to any offset or suspension imposed by such law." Yet, again, the omission actually has no effect on the end result. Whether one uses the widow's benefit amount, as defined at § 402(e)(2)(A) (i.e., $1,469), or the widow's benefit amount without regard to the offset imposed by § 402(k)(3)(A) (i.e., $1,469), the meaning of the two provisions is the same. In other words, § 4.3(d)'s "without regard to" clause merely makes explicit what is implicit or at worst ambiguous in the SPD; it "clarifies the summary's general language." *Mitzel*, 351 F. App'x at 80.

The omission of these two elements from the SPD is not misleading and the discrepancy between the language of the two provisions does not rise to the level of a "conflict." The SPD's summary description is incomplete, in comparison with § 4.3(d)—as would ordinarily be expected—but is otherwise consistent with the Pension Agreement. Hence, there is no conflict between the SPD and the plan such that the SPD definition of the surviving spouse benefit would control over the plan language. *See also Sullivan v. CUNA Mut. Ins. Soc'y*, 649 F.3d 553, 557-58 (7th Cir. 2011) (citing *CIGNA*, 131 S.Ct. at 1876-80, and observing that "[a] participant who draws an unfounded inference from an omission from a summary plan description is not entitled to a remedy.").[5]

### E. Miscellaneous Arguments

The parties have presented various arguments regarding the intent underlying § 4.3(d) of the Pension Agreement. There is, however, substantially no extrinsic evidence of the parties' intent. Nor is there any need to resort to extrinsic evidence, as § 4.3(d), *construed in light of the pertinent § 402 provisions to which it refers*, appears to be unambiguous, its meaning plain.[6]

---

[5]The dissent chides us for this line of analysis on two grounds. First, we are faulted for addressing Lipker's argument that there is a conflict between the plan and the SPD because the line of authorities that supported her claim for relief under such a theory has been overruled. We agree with the dissent's view that the holding of *CIGNA* undercuts Lipker's position. As explained above in responding to Lipker's argument, however, we do not reach the impact of *CIGNA*'s holding because the threshold requirement, a conflict between the plan and the SPD, is not presented.

Second, besides faulting us for addressing the argument Lipker has made, the dissent also faults us for not responding to an argument she has not made. Citing *dicta* from *CIGNA*, the dissent contends we should remand for consideration of a potentially appropriate theory of equitable relief that Lipker never pled below, has not argued in this appeal, and has not even asserted, post-*CIGNA*, as grounds for remand and reconsideration. The dissent's position misconceives our role.

[6]We acknowledge that the language of both § 4.3(d) and the parallel SPD provision, viewed on its face, cannot be said to have a "plain meaning"—either to a lawyer or a layperson. But neither is designed to be read on its face; both provisions include reference to "the law" or " Social Security." Hence, neither provision is understandable without reference to the Social Security Act. We further acknowledge that a casual reading of the pertinent provisions of the Social Security Act yields no ready answer as to how the § 4.3(d) and SPD provisions are to be understood. The provisions of § 402 of the Act are complex. Yet, by referring to "widow's Social Security benefit" in the SPD and "the law" in § 4.3(d), AK Steel has clearly put the average reasonable plan participant or beneficiary on notice of the need to make further inquiry if the specifics of the surviving spouse benefit are to be understood. As explained above, such further inquiry yields a clear and sensible meaning.

Also unavailing is plaintiff's argument that AK Steel's construction and application of § 4.3(d) "penalizes" surviving spouses who earned their own old-age benefits. Quite to the contrary, when applied in accordance with its express terms, § 4.3(d) treats all surviving spouses equally, irrespective of their work history. By disregarding the Social Security offset to the widow's benefit that stems from the widow's own work history, AK Steel Pension Plan intentionally disregards the widow's work history, putting all widows in the same position.

### III.  CONCLUSION

In sum, for the reasons set forth above, we hold that AK Steel's determination of plaintiff's surviving spouse benefit was and is correct and that the district court's judgment in favor of plaintiff Margaret Lipker must be **REVERSED**. The case is **REMANDED** to the district court for entry of judgment in favor of AK Steel.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

MARK A. GOLDSMITH, District Judge, concurring in part and dissenting in part. I agree with all but Section II.D of the majority's opinion. My disagreement concerns two issues. First, the majority engages in a legal analysis for a claim under 29 U.S.C. § 1132(a)(1)(B), based on an asserted conflict between language in an ERISA-covered plan and the summary plan description (SPD), that is no longer relevant after the United States Supreme Court's decision in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011). Second, the majority bars Lipker on remand from seeking equitable relief under 29 U.S.C. § 1132(a)(3), even though the viability of such relief was shrouded in uncertainty until *CIGNA*. For the reasons explained in more detail below, I would reverse the judgment of the district court, but remand the case to that court for consideration of appropriate equitable relief in light of *CIGNA*.

*CIGNA* was decided well after the district court issued its final judgment in this case. Where there has been an intervening change in law during the pendency of an appeal, this court generally must "apply the law in effect at the time it renders its decision." *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 712 (1974). Therefore, *CIGNA* must be followed in this case.

In *CIGNA*, the Supreme Court held that SPDs do not constitute plan terms for claims brought under 29 U.S.C. § 1132(a)(1)(B). *See CIGNA*, 131 S. Ct. at 1878 ("[T]he summary documents, important as they are, provide communication with beneficiaries *about* the plan, but . . . their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B).") (emphasis in original). *See also Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 265 n.9 (6th Cir. 2012) ("In *CIGNA*, an ERISA action to recover amounts due under an ERISA plan, the Court clarified that the provisions of an SPD could not be enforced as terms of the ERISA plan itself.").

At the same time, however, the *CIGNA* Court suggested, in *dicta*, that relief under § 1132(a)(3) – which allows courts to grant "other appropriate equitable relief" – is available to redress injuries caused by an administrator's failure to provide accurate summary information. *See CIGNA*, 131 S. Ct. at 1878-82 (discussing whether § 1132(a)(3) provides relief to those injured by inaccurate summary language, and concluding that "[w]e doubt that Congress would have wanted to bar those employees from relief").[1]

In the present case, the majority acknowledges *CIGNA*'s holding. *See* Opinion at 12 n.4. Nonetheless, it proceeds to apply pre-*CIGNA* authority to resolve Lipker's alternative argument under § 1132(a)(1)(B) that she is entitled to a higher pension amount based on language in the SPD, regardless of any conflicting language in the plan. *See* Opinion at 10-12 (citing various pre-*CIGNA* cases, including *University Hospitals of Cleveland v. Emerson Electric Company*, 202 F.3d 839, 850-51 (6th Cir. 2000)). After *CIGNA*, however, this line of cases is inapplicable because the Supreme Court has now held that an SPD does not constitute "terms of the plan" that a beneficiary may enforce under § 1132(a)(1)(B). The majority's analysis of possible conflict between the plan and the SPD is irrelevant because, in either case, the SPD language cannot be enforced under that ERISA provision. Therefore, I would simply invoke *CIGNA* to reject Lipker's alternative argument under § 1132(a)(1)(B).

More importantly, the majority errs in summarily depriving Lipker of the opportunity to return to the district court to assert a claim for equitable relief under § 1132(a)(3). The majority does so because, in its words, "no such equitable theory is

---

[1]Following *CIGNA*, other courts have uniformly recognized what the Supreme Court strongly implied in *CIGNA* – that, under appropriate circumstances, equitable remedies under § 1132(a)(3) are available to redress injuries stemming from inaccurate summary language. *See Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012) (citing *CIGNA* for the proposition that "even if the plan's language *un*ambiguously supports the administrator's decision, a beneficiary may still seek to hold the administrator to conflicting terms in the plan summary through a . . . claim under § 1132(a)(3)" (emphasis in original)); *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1165-67 (9th Cir. 2012) (recognizing that, under *CIGNA*, equitable relief pursuant to § 1132(a)(3) is available to redress injuries stemming from reliance on inaccurate summary language); *US Airways, Inc. v. McCutchen*, 663 F.3d 671, 670 (3d Cir. 2011) (citing *CIGNA*, recognizing that equitable relief under § 1132(a)(3) "temper[s]" the "absolute freedom to contract"); *Wallace v. Freight Drivers & Helpers Local No. 557 Pension Fund*, No. 11-2062, 2012 WL 2571223, at *6 (D. Md. Jul. 2, 2012) (noting that, under *CIGNA*, "court may hold a Plan to the terms of its SPDs on equitable grounds (as, in essence, a form of estoppel)").

asserted in plaintiff's complaint, which expressly prays only for award of benefits under the 'specific' and 'clear and unambiguous language' of the plan." Opinion at 10 n.4.

It is true that Lipker did not expressly seek equitable relief before the district court.**²** But her failure to do so is not surprising and certainly not unreasonable, as her right to do so was not apparent until May 16, 2011, the day *CIGNA* was decided, more than two years after this case was originally filed. Prior to *CIGNA*, SPD language was deemed plan language to the extent there was a conflict between the two. *See, e.g.*, *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988) ("This Circuit has decided that statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern."). Further, § 1132(a)(1)(B) was utilized as the avenue for relief from injuries arising out of such conflicts. *See, e.g., id.*; *Rhoton v. Cent. States, Se. & Sw. Areas Pension Fund*, 717 F.2d 988 (6th Cir. 1983). Moreover, prior to *CIGNA*, there was significant uncertainty whether § 1132(a)(3) provided an avenue for relief based on such a conflict. *See CIGNA*, 131 S. Ct. at 1876 (noting that district court did not award equitable relief under § 1132(a)(3) because of Supreme Court cases that narrowed application of that section). Only after *CIGNA* did it become clear that (i) § 1132(a)(1)(B) does not provide an avenue for relief from injuries stemming from conflicts between SPD language and plan language, and (ii) § 1132(a)(3) may well provide an avenue for such relief.

In situations where an intervening change-in-law during the pendency of an appeal renders an old theory untenable and a new theory viable, it is only fair to return the case to the district court for a determination, in the first instance, whether to permit the new claim to proceed. *See Del Rosario v. King & Prince Seafood Corp.*, 432 F. App'x 912, 913 (11th Cir. 2011) (affirming dismissal of claim for benefits under § 1132(a)(1)(B), but remanding "for reconsideration of the issue of whether a remedy exists under . . . § 1132(a)(3), in light of the Supreme Court's decision in *CIGNA*").

---

**²**In her complaint, Lipker did not expressly seek relief under § 1132(a)(1)(B) either. The barebones complaint, which does not even mention ERISA, alleges only that AK Steel miscalculated the widow's benefit to which she is entitled under the plan, and requests relief as follows: "the Plaintiff prays for a determination of the Court that the plan must comply with the specific language set forth within the plan contract; for back pay; for interest, costs and attorney's fees; and for any and all other appropriate relief to which she may appear entitled."

However, the majority refuses to do so here because "Lipker never pled below, has not argued in this appeal, and has not even asserted, post-*CIGNA*," a claim for equitable relief.  Opinion at 12 n.5.  As discussed, Lipker's failure to plead an equitable claim below was reasonable under the circumstances.  Regarding her failure to raise the issue of equitable relief under § 1132(a)(3) during the pendency of this appeal, Lipker's brief on appeal was due and submitted *before CIGNA* was decided.  Further, this court never directed the parties to submit supplemental briefs addressing the impact of *CIGNA* on this case.  Tellingly, neither attorney in this matter has mentioned *CIGNA* to this court – not during oral argument and not in any post-argument submission.  In light of the obvious relevance of that decision to this case and the fact that neither attorney has brought the case to the court's attention, it is likely that neither counsel is aware of the decision.  The majority's insistence on forever barring Lipker from pursuing a form of relief to which she may be entitled simply because her attorney is apparently unaware of an intervening sea-change in the law is unreasonably harsh.

The majority holds that it is not the role of the court to order *sua sponte* a remand for the purpose of allowing the district court to address an unasserted claim.  *See* Opinion at 12 n.5 ("The dissent's position misconceives our role.").  While I agree with the majority that courts generally should not raise issues and claims that were not raised by the parties, there are plainly extenuating circumstances here justifying a remand – namely, a significant change in the law (occurring *after* the district court proceedings and *after* the deadline for briefing on appeal) that created the possibility of a viable cause of action, previously viewed dubiously by the courts.

The power of an appellate court to remand *sua sponte* under circumstances that are just is well established and deeply rooted.  *See* 28 U.S.C. § 2106  ("The Supreme Court or any other court of appellate jurisdiction may . . . remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."); *Underwood v. Comm'r of Internal Revenue*, 56 F.2d 67, 73 (4th Cir. 1932) ("In a number of instances, Circuit Courts of Appeals have remanded cases for rehearing when it seemed necessary in order

to do justice to the parties. . . . In addition, there is the well-established rule that an appellate court has the power, without determining and disposing of a case, to remand it to the lower court for further proceedings if the case has been tried on a wrong theory, or the record is not in condition for the appellate court to decide the question presented with justice to all parties concerned."). In *Nuelsen v. Sorensen*, 293 F.2d 454 (9th Cir. 1961), the court of appeals ordered a remand for the district court to consider issues not raised before either court, explaining:

> There is, however, no rigid and undeviating judicially declared practice under which courts of review invariably and under all circumstances decline to consider all questions which have not previously been specifically urged. Indeed there could not be without doing violence to the statutes which give federal appellate courts the power to modify, reverse or remand decisions 'as may be just under the circumstances.' 28 U.S.C. § 2106. Exceptional cases or particular circumstances may prompt a reviewing court, where injustice might otherwise result or where public policy requires, to consider questions neither pressed nor passed upon below. The power to raise and decide question sua sponte is, however, to be exercised sparingly and with full realization of the restrictions and limitations inherent in its employment.
>
> Rather than consider the matter sua sponte, of course, the appellate court may note the existence of the unargued, undecided question and remand the case to the lower court. This makes the decision on the matter one reflecting the consideration of a trial court and the counsel in the case.

*Id*. at 462 (footnotes omitted).

Exceptional circumstances for a remand exist here where an unpled claim of questionable validity became viable on appeal because of an intervening Supreme Court decision. Given that there is no prejudice to AK Steel in ordering a remand to consider such a claim, it is well within the role of this court, as a court of justice, to see that Lipker receives a full opportunity to vindicate her rights under ERISA.

For all of these reasons, reversal of the district court should be accompanied by a remand for a determination whether Lipker can proceed on an equitable theory under § 1132(a)(3) in light of *CIGNA*. Because the majority opinion does not order a remand for this purpose and because of its failure to apply *CIGNA* properly, I must respectfully dissent from Section II.D of the majority's opinion.