NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0459n.06

No. 13–2374

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 18, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RANDY D. PEARCE, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHRYSLER GROUP, L.L.C. PENSION | ) | EASTERN DISTRICT OF MICHIGAN |
| PLAN, | ) | |
| | ) | |
| Defendant - Appellee. | ) | |
| | ) | |

**BEFORE:  WHITE, DONALD, and O'MALLEY\*, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  In this action to recover supplemental retirement ("30-and-Out") benefits from Defendant-Appellee Chrysler Group L.L.C. Pension Plan ("Plan") under the Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff-Appellant Randy Pearce ("Pearce") appeals the district court's:  1) grant of summary judgment to the Plan;  2) finding that the Summary Plan Description ("SPD") did not materially conflict with the Pension Plan, and therefore any motion to amend the complaint to seek equitable relief under ERISA § 502(a)(3) would be futile; 3) denial of Pearce's request for discovery; and 4) striking of Pearce's reply brief filed in opposition to the Magistrate Judge's Report and Recommendation.  We AFFIRM as to issues 1, 3 and 4, and REVERSE and REMAND as to issue 2.

---

\* The Honorable Kathleen M. O'Malley, United States Court of Appeals for the Federal Circuit, sitting by designation.

## I. FACTS

In October 2008, with insolvency looming, Chrysler offered Pearce—a 60-year old who had worked in a Chrysler manufacturing plant for more than 33 years—a buyout package consisting of $50,000 plus a $25,000 car voucher.  These incentives would be in addition to any benefits Pearce had earned under the Pension Plan, which included 30-and-Out benefits designed to help early retirees make ends meet until eligible for Social Security benefits.  Chrysler provided Pearce with Pension Statements to help him decide whether to accept the buyout, all of which advised Pearce to consult the SPD for more details.[1]

It is undisputed that Pearce was eligible for 30-and-Out benefits at the time he was offered the buyout in October 2008.  Approximately one month later, on November 25, 2008, after discussing the terms of the SPD and his likely future with other employees of Chrysler, Pearce declined the buyout offer.  That same day, Chrysler terminated Pearce's employment based on his alleged improper use of company vehicles.[2]  The next day, Pearce applied to Chrysler's benefit manager, Benefit Express/Hewitt LLC ("Benefit Express"), for the pension benefits he had earned under the Pension Plan.

Pearce was anticipating receiving both his pension and 30-and-Out benefits because he believed that he had satisfied the requirements set forth in the SPD.  When he received his first Pension Calculation Statement, however, he learned that the Plan was not paying him 30-and-Out benefits.  Benefit Express sent Pearce a letter explaining that he did not qualify for 30-and-Out benefits because he had been terminated, and, under the terms of the Pension Plan, a terminated employee is expressly excepted from receiving 30-and-Out benefits.  Pearce, having only been given the SPD, asked Benefit Express where in the SPD he could "find what you have

---

[1]  The Plan is required to furnish Pearce with an SPD.  29 U.S.C. § 1022.

[2]  Pearce denied any wrongdoing, filed an age-discrimination claim, and settled that claim in Chrysler's bankruptcy proceeding.

stated and you have written." There is no indication in the record that Pearce received a response.

Pearce then submitted a claim to Benefit Express's Determination Review Team under ERISA § 502(a)(1)(B). This claim was denied on the basis that Pearce's "employment with the Corporation ceased prior to the date [he had] retired." Pearce requested a copy of the Pension Plan and, after reviewing it, timely appealed Benefit Express's determination to the Chrysler Employee Benefits Committee/Pension Plan Administrator ("EBC").[3] The EBC did not respond, Pearce brought an action in Michigan state court, and Chrysler removed the action to federal court. After the federal court proceedings had begun, the EBC denied Pearce's administrative appeal. Because the EBC's decision was untimely, the district court remanded Pearce's claim to the EBC for review of a renewed appeal. Pearce renewed his administrative appeal, arguing that his claim should be evaluated based on the SPD's language, and that the terms of the Pension Plan itself are not controlling because they materially conflict with the SPD. The EBC denied Pearce's appeal, and Pearce reopened his case in federal court.

In the meantime, the Supreme Court held in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), that for claims brought under ERISA § 502(a)(1)(B), conflicts between the terms of an SPD and a Pension Plan must be resolved in favor of the Pension Plan. *Id*. at 1878. However, the Court went on to strongly suggest, if not hold, that conflicts between an SPD and the Pension Plan can be addressed under ERISA § 502(a)(3), which allows a plan "participant, beneficiary, or fiduciary 'to obtain appropriate equitable relief' to redress violations of . . . ERISA." *Id*. (quoting 29 U.S.C. § 1132(a)(3)).

---

[3] Pearce alleges that he was unable to review the Pension Plan until May 5, 2010, and thus relied solely on the SPD.

Pearce sought leave to amend his complaint to seek the equitable remedies of reformation, estoppel, and surcharge under ERISA § 502(a)(3). After a Magistrate Judge issued a Report and Recommendation denying Pearce's claims, Pearce filed timely objections, the Plan responded, and Pearce filed a reply brief. The district court struck Pearce's reply brief, adopted the Magistrate Judge's Report and Recommendation, dismissed Pearce's complaint, and denied as futile Pearce's motion to amend his complaint. Specifically, the district court concluded that the SPD and the Pension Plan do not conflict, that the Plan's denial of Pearce's claim was neither arbitrary nor capricious, and that *CIGNA* barred Pearce's claim to enforce the terms of the SPD under ERISA § 502(a)(1)(B). *Pearce v. Chrysler Grp. LLC Pension Plan*, No. 10–14720, 2013 WL 5178478, at *10 (E.D. Mich. Sept. 12, 2013). Pearce now appeals.

## II. THE SPD AND PLAN

### A. The SPD

Pertinent here, the SPD states:

> This Summary Plan Description (SPD) summarizes the Pension Plan and covers the highlights of the Plan details of greatest interest to you. Make sure to read carefully the sections explaining the basic pension rates and the type of retirement that would apply to you.
>
> While this booklet provides most of the information you need to know about the Chrysler LLC Pension Plan, it is only a summary of Plan provisions. The Chrysler LLC Pension Plan is governed by its Plan document and trust agreement. If there is a conflict between this summary and the Plan document and trust agreement, the Plan document and trust agreement will govern.
>
> . . . .

**Early Retirement - Between Age 55 and 62**

**Eligibility**
You can retire at or after age 55, but before age 62[,] if you meet either of the following conditions:
- Your age and credited service total 85 points or more
- You have 10 or more years of credited service.

. . . .

**Monthly Pension Supplements and Temporary Pension**

Supplements consist of either an early retirement supplement for eligible retirees with 30 or more years of credited service or an interim supplement for eligible retirees with less than 30 or more years of credited service. *You do not need to be actively employed at retirement to be eligible for a supplement. However, you must retire and begin receiving pension benefits within five years of your last day of work for the Company in order to receive any supplements for which you are eligible.*

**Early Retirement Supplement**
If you are eligible for Early Retirement . . . and you have 30 or more years of credited service you may receive an early retirement supplement. This supplement is payable to you until you reach age 62 and one month.

### B. The Pension Plan

The relevant section of the Pension Plan expands upon the requirements for pension-supplement eligibility:

Eligibility Requirements. A participant who satisfies the following criteria shall be eligible to receive an Early Retirement Supplement:

1. Participant is under the age of 62 and one month;
2. The Participant has been credited with at least 30 years of Credited Service;
3. Participant will retire under the early, special early[,] or permanent total disability retirement provisions hereof; and
4. The Participant has filed his application for a Pension within five years of the last day of his employment.

> *Notwithstanding the foregoing, a Vested Terminated Participant who met the eligibility requirements for early retirement at the date his employment terminated shall not be eligible to receive an Early Retirement Supplement. . . .*

For purposes of the Pension Plan, a "Vested Terminated Participant" is defined as "an individual whose employment with the Corporation ceased prior to the date he retired and who possessed a vested right to a Deferred Pension at the date of termination of his employment."

### III. ANALYSIS

### A.

We review de novo the district court's grant of summary judgment, applying the same standard of review to the administrator's action as that applied by the district court. *Bidwell v. Univ. Med. Ctr., Inc.*, 685 F.3d 613, 616 (6th Cir. 2012). The parties agree that we give no deference to the EBC's determination whether the SPD conflicts with the Pension Plan.[4] Under the de novo standard, "[t]he most important consideration in construing a plan 'is the language of the plan itself as known by the employees, or as the employees should have known.'" *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006) (quoting *Callahan v. Rouge Steel Co.*, 941 F.2d 456, 460 (6th Cir. 1991)); *see also* 29 U.S.C. § 1022(a) (stating that an SPD "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan"). Thus, though we employ "general principles of contract law," *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000), our review considers how a reasonable participant would have understood the language, *Kolkowski*, 448 F.3d at 850.

---

[4] Pearce argues that the district court erred in using the deferential "arbitrary and capricious" standard in deciding whether the SPD conflicts with the Pension Plan; the Plan disagrees, arguing that the district court did not use this deferential standard in its actual analysis. We need not parse the language used by the district court, however, because we apply the de novo standard.

**B.**

Pearce argues that he is eligible for 30-and-Out benefits because he satisfied all of the preconditions of eligibility discussed in the SPD: he had accrued a total of 85 points, he had 10 or more years of credited service, and he had applied for pension benefits within five years of his last day of work. Further, argues Pearce, the SPD made clear that 30-and-Out benefits were not limited to "active employees," because the SPD clearly stated "You do not need to be actively employed at retirement to be eligible for a supplement."

The Plan disagrees, arguing that 30-and-Out benefits are only available to participants who are employed in some capacity on their last day of work. The Plan points to the terms of the Pension Plan that expressly preclude a terminated employee, such as Pearce, from receiving 30-and-Out benefits: "Notwithstanding the foregoing, a Vested Terminated Participant who met the eligibility requirements for early retirement at the date his employment terminated shall not be eligible to receive an Early Retirement Supplement. . . ."

Here, it is clear that Pearce is not eligible for 30-and-Out benefits under terms of the Plan, and thus he cannot recover under ERISA § 502(a)(1)(B). *CIGNA*, 131 S. Ct. at 1878 (holding that SPDs provide "communication with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)" ). We therefore affirm the grant of summary judgment to the Plan on Pearce's § 502(a)(1)(B) claim.

**C.**

This does not end the inquiry, however, because under ERISA § 502(a)(3), a material conflict between the SPD and the Pension Plan can give rise to a claim for equitable relief. The district court denied Pearce's motion to amend as futile, a decision we review for an abuse of discretion. *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010); *Crawford v. Roane*, 53 F.3d

750, 753 (6th Cir. 1995). We will find that a district court abused its discretion when we are "firmly convinced that a mistake has been made." *Rorrer v. City of Stow*, 743 F.3d 1025, 1048 (6th Cir. 2013) (citing *Ross v. Duggan*, 402 F.3d 575, 581 (6th Cir. 2004)).

Under ERISA, the SPD must be "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The SPD must include, *inter alia*, "the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; [and] *circumstances which may result in disqualification, ineligibility, or denial or loss of benefits*." 29 U.S.C. § 1022(b) (emphasis added).

As a preliminary matter, as used by the Plan, the word "retire" appears to refer to the time when a participant applies for pension benefits. For example, the SPD has a section entitled "When You Retire" that states: "Your pension begins the month following the date you elect to retire or following the last day you work, whichever is later." Thus, retirement does *not* appear to denote the day on which the employer-employee relationship ends. Rather, it is used as a term of art referring to the date on which the participant seeks pension benefits from the Plan.[5] It is with this understanding that we review the relevant portions of the SPD and Pension Plan.

When Pearce, or another employee in his position, received the SPD, the circumstances as well as the SPD's form and organization would have led him to first review the requirements for early retirees between the age of 55 and 62 to be eligible to receive supplemental benefits: at least 85 points and 10 years of "credited service." Aware that he satisfied both of those requirements, Pearce would have continued reading, and discovered that the supplemental benefits would consist of "an early retirement supplement" because he had "30 or more years of

---

[5] This was confirmed at argument.

credited service." Immediately after learning that he was eligible for the supplement, Pearce would see the rules governing receipt of the benefit: "You do not need to be actively employed at retirement to be eligible for a supplement. However, you must retire and begin receiving pension benefits within five years of your last day of work for the Company in order to receive any supplements for which you are eligible." Beyond this limitation, the SPD offered no indication to Pearce that his eligibility was further contingent on his employment status at the time of retirement, and omitted the material limitation that appears in the Pension Plan regarding "Vested Terminated Participants." Thus, a "conflict" between the SPD and the Pension Plan exists because "the [SPD] misleads or fails to state additional requirements contained in the plan document." *See Lipker v. AK Steel Corp.*, 698 F.3d 923, 931 (6th Cir. 2012) (citing *Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 80 (6th Cir. 2009)). Indeed, the very wording of the limitation stated in the Pension Plan—"Notwithstanding the foregoing"—indicates that the limitation is inconsistent with the immediately preceding requirements, which are the only ones summarized in the SPD.

This finding is in accord with our past decisions. For example, in *Edwards v. State Farm Mutual Automobile Insurance Co.*, an employer distributed an SPD to its employees, but it did not distribute the actual Plan document itself. 851 F.2d 134, 136 (6th Cir. 1988), *abrogated on other grounds by CIGNA*, 131 S. Ct. 1866. The SPD contained an "obviously misleading" statement regarding sick leave, and we held in favor of the employee because the employer "should have realized that the explicit language of the [SPD] could or would have caused [the employee] and similarly situated unsophisticated lay employees to rely upon [the plan administrator's] inadvertant [sic] misrepresentation to their detriment." *Id.*; *see also Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 565 (6th Cir. 2007) ("The principle underlying our

decision in *Edwards*, and the summary plan disclosure obligations contained in ERISA § 1022, is ultimately one of pragmatic fairness."). We then stated that "[i]t is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document and then proclaim that any inconsistencies will be governed by the plan" because "[u]nfairness will flow to the employee for reasonably relying on the summary booklet." *Edwards*, 851 F.2d at 136 (internal quotation marks and citation omitted); *see also Haus*, 491 F.3d at 566 ("[W]here a conflict exists between the information contained in a summary plan description and the plan itself, the resulting ambiguity severely disadvantages plan participants."). This reasoning is equally applicable here.

Similarly, in *Lipker*, the plaintiff argued that the SPD and the Pension Agreement conflicted regarding widow's benefits. 698 F.3d at 931. After reviewing the alleged conflict, we found that the asserted conflict was "really nothing more than an innocuous 'omission'" because the omission "actually ha[d] no effect on the end result," and determined that "the SPD's summary description [wa]s incomplete, . . . but [wa]s otherwise consistent with the Pension Agreement." *Id.* at 931–32. However, we made clear that any material conflict between the SPD and Pension Plan would create potential liability for the Plan. *Id.* at 931.

Here, Pearce was provided an SPD that was directly inconsistent with the Pension Plan insofar as the requirements for obtaining 30-and-Out benefits are concerned. Thus, the omission of the "Vested Terminated Employee" sentence was anything but "innocuous," and, as a result, the SPD affirmatively "misle[d] or fail[ed] to state additional requirements" for obtaining 30-and-Out benefits. *See id.* at 931; *see also Edwards*, 851 F.2d at 136 ("It is grossly unfair to hold an employee accountable for acts which disqualify him from benefits if he had no knowledge of these acts or if these conditions were stated in a misleading or incomprehensible manner in the

plan booklets." (quoting H.R. Rep. No. 93–533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 4639, 4646)).  Thus, the district court abused its discretion when it denied Pearce's motion to add equitable claims under ERISA § 502(a)(3) on the basis of futility.

The problem of the conflict inherent when an SPD "fails to state additional requirements contained in the plan document," *Lipker*, 698 F.3d at 931, is compounded here by the language of the SPD.  The use of the word "however" in the SPD's "Monthly Pension Supplements and Temporary Pension" section alerts participants that the two sentences should be read together. *See Reardon v. Kelly Servs., Inc.*, 210 F. App'x 456, 460 (6th Cir. 2006) ("The word choice and syntax of the [SPD] indicates that the two sentences of the provision were intended to be read together.").  The first sentence clarifies that the participant need not be "actively" employed.  It does not, however, explain if it is distinguishing "active" employees from "inactive" employees (as the Plan argues), or, rather, if it is simply stating that a participant's employment status is irrelevant (as Pearce argues).  Given the appropriate lens through which we review SPD terms, *Kolkowski*, 448 F.3d at 850, it is easy to understand how Pearce, a non-attorney, would have understood the latter meaning.  Either way, the second sentence sets forth the only affirmative requirement for the participant:  the participant must "retire" and begin receiving benefits within five years of the last day of work.  Stated differently, the first sentence explains what *is not* needed (you do not need to be an "active employee"), and the second sentence explains what *is* needed ("you must retire and begin receiving pension benefits within five years of your last day of work for the Company").  Pearce was not an active employee when he retired, and he began receiving pension benefits within months of his last day of work.  Under the terms of the SPD (but not the Plan because of its additional exclusion), he qualifies for 30-and-Out benefits.  It is

irrelevant, for purposes of ERISA § 502(a)(3), that he is clearly excluded under the terms of the Pension Plan.

Though perhaps an aside, we think it is notable that inclusion of a single sentence, the exclusion clause (which is already required by 29 U.S.C. § 1022(b)), would have easily prevented this misunderstanding from arising. Accordingly, we do not run afoul of our long-standing recognition that "by definition, a summary will not include every detail of the thing it summarizes." *Lipker*, 698 F.3d at 931 (internal quotation marks and citation omitted). Each detail of the Pension Plan need not be in (nor should be in) the SPD, but material limitations on a participant's rights are required to be included. *See* 29 U.S.C. § 1022(b).

At bottom, "You don't have to be an active employee" does not equate to "You must be an employee." The district court erred in concluding that a participant, such as Pearce, who read the SPD would understand that he must be an employee to qualify for 30-and-Out benefits.[6] This material conflict between the Pension Plan and the SPD permits Pearce to seek equitable relief under ERISA § 502(a)(3). *CIGNA*, 131 S. Ct. at 1880. Accordingly, the district court abused its discretion when it denied Pearce leave to amend his complaint on the basis of futility.[7]

**D.**

Pearce next challenges the district court's decision to strike his reply brief. We review the district court's determination to strike Pearce's reply brief for abuse of discretion. *Seay v. TVA*, 339 F.3d 454, 480 (6th Cir. 2003). An abuse of discretion exists when the district court's action leaves us with "a definite and firm conviction that the trial court committed a clear error

---

[6] The Plan briefly argues that a general disclosure statement contained in the SPD told Pearce that the Pension Plan controlled in the event of conflict. We have made clear that "it would make no sense for Congress to require employers to provide clear, simple, complete descriptions of benefits plans if the employee were expected to also know and understand every clause in the voluminous, complex, and legalistic document the SPD was intended to accurately describe." *Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 249–50 (6th Cir. 1996). Thus, this argument fails.

[7] We express no opinion on the merits of Pearce's ERISA § 502(a)(3) claims other than that they are not futile.

of judgment." *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 991 (6th Cir. 1999) (internal quotation marks and citation omitted). District courts have broad discretion in interpreting, applying, and determining the requirements of their own local rules and general orders. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008); *United States v. Gray*, 876 F.2d 1411, 1414 (9th Cir. 1989).

Although Federal Rule of Civil Procedure 72(b) is silent regarding whether reply briefs are authorized in the context of objecting to a Magistrate Judge's report and recommendations, Pearce argues that the Eastern District of Michigan's Local Rules specifically permit the filing of a reply brief. That local rules states that "[a] person may file a reply brief within 7 days of service of a response." E.D. Mich. L. R. 72.1(d)(4). Pearce also points to the district court's Scheduling Order, which provided that "Plaintiff's Reply, if any, will be due on or before August 23, 2013."

Despite the apparent strength of Pearce's argument, "[w]e do not ordinarily enforce local rules of practice when the district court, as here, does not enforce them." *United States v. Kingston*, 922 F.2d 1234, 1240 (6th Cir. 1990); *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984) ("[L]ocal rules . . . are designed as internal housekeeping rules to promote the efficient operation of the district courts; they are not meant to confer rights on litigants."). We decline to do so here. The district court did not abuse its discretion.

### E.

Pearce also argues that the district court erred in denying his discovery request. We review challenges to a district court's discovery order for an abuse of discretion. *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 510 (6th Cir. 2009). Pearce asserts that the district court abused its discretion by denying his request for reasonable access to, and copies of,

all documents, records, and other information relevant to his claim for benefits because a "full and fair" administrative hearing is guaranteed by ERISA. Specifically, Pearce requested information from the Plan regarding the Plan's reasoning for not including in the SPD the substantive limitation clause found in the Pension Plan as well as the identity and background of the persons who would decide Pearce's appeal. The district court denied Pearce's request and issued a protective order. Pearce argues that he needed this information to discern whether the ECB "was impacted by a conflict of interest."

"The scope of discovery is, of course, within the broad discretion of the trial court. An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks and citation omitted). Where a plaintiff has laid a factual foundation to support a claim for lack of due process or bias, his right to discovery must be balanced against the "need to prevent fishing expeditions." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) (internal quotation marks and citation omitted). Here, the district court's review is limited to the administrative record absent *evidence* to support "a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). Pearce does not allege that a conflict of interest is present; rather, he argues that he should be allowed to engage in discovery to discern whether a conflict exists. Without such an allegation, we cannot say that the district court's order substantially prejudiced Pearce. *Lewis*, 135 F.3d at 402. Thus, the district court did not abuse its discretion.

**IV.**

For the foregoing reasons, we AFFIRM the district court's decision to deny Pearce discovery and strike his reply brief; AFFIRM the grant of summary judgment on Pearce's claim under ERISA § 502(a)(1);  REVERSE the denial of Pearce's motion to amend to add equitable claims under ERISA § 502(a)(3); and REMAND for consideration of the ERISA § 502(a)(3) claims.