NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0547n.06

No. 14-5632

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 03, 2015
DEBORAH S. HUNT, Clerk

FONTAINE TAYLOR,

    Plaintiff-Appellee

v.

MARK THOMAS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

Before: BOGGS and KETHLEDGE, Circuit Judges; HELMICK, District Judge.[*]

KETHLEDGE, Circuit Judge.   Fontaine Taylor sued Mark Thomas for trademark infringement under the Lanham Act, and for related violations of the Tennessee Consumer Protection Act (TCPA).  A jury found in Taylor's favor and awarded her $36,500 in damages under the TCPA.  The district court doubled that award, added damages under the Lanham Act, and awarded attorneys' fees.  Thomas appeals, arguing that Taylor failed to establish a violation of the TCPA, and that the jury and court improperly awarded Taylor damages and fees.  We affirm.

I.

Taylor was the sole owner and managing broker of the real-estate firm Coleman-Etter-Fontaine in East Memphis for 23 years before deciding that she no longer wanted to run her own business.  In January 2011, she sold most of Coleman-Etter's assets to another firm, Crye-Leike,

---

[*] The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

which she then joined as a real-estate agent. She did not sell, however, the rights to use Coleman-Etter's intellectual property, which included a service mark depicting the Memphis skyline. Coleman-Etter's agents had used that skyline mark on their yard signs since 1951. The bottom of the signs displayed the skyline in deep blue with overlaid text identifying a specific realtor and her phone number. The top of the signs said "Coleman-Etter-Fontaine" in red lettering on a white background. Once Taylor joined Crye-Leike, she stopped using Coleman-Etter's yard signs but kept an image of the sign on her individual realtor website. Coleman-Etter stopped operations in March 2011.

Thomas had worked for Coleman-Etter as a real-estate agent for 17 years when the firm closed. He joined the Keller Williams firm in part because Keller Williams allowed him to brand himself. Thomas ordered new yard signs from Patricia and Ken Berryhill—the same signmakers that made the Coleman-Etter signs. Thomas initially requested red, white, and blue signs that displayed the same skyline as the Coleman-Etter signs. Patricia told him that she thought his signs would too closely resemble Coleman-Etter's, and asked him to make sure that he could legally use such a sign. Ken proposed a redesigned skyline in light grey on a white background with red lettering. Thomas approved the sign except for the color of the skyline, which he asked them to recolor blue. Thomas assured the Berryhills that he had done due diligence and could use the sign.

At some point, Thomas spoke to two lawyers. The first—a real-estate lawyer—told Thomas that he needed to determine whether the mark was registered (it was not), and whether Taylor or Coleman-Etter still claimed any rights in the mark. He recommended that Thomas seek guidance on those questions from someone with expertise in intellectual property. The

second, a family-law attorney, told Thomas that he could not give him any advice and referred him to an intellectual-property lawyer.

Thomas ignored this advice, did not speak to anyone else about the signs, and began using them on March 9, 2012. Taylor saw one of the signs, called Thomas immediately, and asked him to call her back. He did not return her call. Taylor then called Thomas's boss and the Berryhills to complain and to request that Thomas take down the signs. Thomas refused. The Berryhills proposed alternate designs, but both Taylor and Thomas rejected them. Taylor then hired a lawyer, who sent Thomas a cease-and-desist letter. Thomas still refused to take down the signs. Taylor then began using the Coleman-Etter service mark again on her own signs.

In April 2012, Taylor sued Thomas for violations of the Lanham Act and the TCPA, seeking injunctive relief and damages. On May 7, 2012, the district court granted Taylor's motion for a preliminary injunction, and ordered Thomas to take down the signs. Thomas complied, but the court found that his new signs—which used a blue wave instead of a blue skyline—still too closely resembled the Coleman-Etter mark and held Thomas in contempt.

Both parties later moved for partial summary judgment on the question whether Taylor owned Coleman-Etter's service marks. The court granted Taylor's motion, finding that she owned the marks through an implied assignment. The parties then went to trial in September 2013 on Taylor's Lanham Act and TCPA claims. Taylor and two other witnesses testified that, when they saw Thomas's signs, they initially thought they were the old Coleman-Etter signs. The parties stipulated that Thomas earned about $96,000 in commissions when he used the skyline sign, and $50,000 when he used the wave sign. The jury found that Thomas's use of the skyline sign—but not the wave sign—was likely to cause confusion with Taylor's service marks. It awarded Taylor $36,500 in TCPA damages.

Thomas then moved for judgment as a matter of law, while Taylor moved for additional damages and attorneys' fees. The district court denied Thomas's motion and granted Taylor's motion in part. The court doubled the TCPA award because it found that Thomas's violation was willful and knowing. The court also awarded Taylor $60,770 in Lanham Act damages, attorneys' fees, and a permanent injunction. This appeal followed.

II.

A.

Thomas challenges the district court's holding that Taylor owned Coleman-Etter's service marks as a matter of law through an implied assignment. We review that decision de novo. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 843 (6th Cir. 2013). Thomas admits that Coleman-Etter owned the marks, and that Taylor was the sole owner and shareholder of Coleman-Etter. Thomas argues, however, that Taylor presented insufficient evidence that Coleman-Etter assigned the service marks to Taylor at the time of Coleman-Etter's closing.

When, as here, an assignment is not in writing, the plaintiff can prove an implied agreement to transfer with "strong evidence" of "conduct manifesting agreement." *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir. 1997). Taylor—Coleman-Etter's sole owner—testified that she assigned ownership of the service marks to herself. And Taylor and Crye-Leike agreed that the marks would remain her property after she joined Crye-Lieke, where she continued to offer residential real-estate services in the same area as she had at Coleman-Etter. Moreover, Taylor actively controlled the marks—she gave two Crye-Leike agents (but no others) permission to use the skyline mark and gave Crye-Leike permission to use a different mark. Thus, Taylor presented strong evidence of conduct showing an implied assignment.

Thomas offers two responses. First, he contends that Taylor lost any rights she had in the marks when Coleman-Etter ceased its business operations. Property rights in service marks do not exist in isolation; they exist only as a right attached "to an established business or trade in connection with which the mark is employed." *See Yellowbook*, 708 F.3d at 844 (internal quotations omitted). The owner of a business may retain the right to use its service mark even after the sale of the business, if the owner shows that she intended "to resume producing substantially the same product or service," that she resumed doing so within a reasonable time, and that "some portion of the [company's] goodwill remain[s] with the owner." *Id.* (internal quotations omitted).

Here, undisputed evidence showed that, after Coleman-Etter closed, Taylor continued to provide real-estate services in the same area without interruption, and that members of the community continued to associate her with Coleman-Etter and its intellectual property. In addition, Taylor redirected the old Coleman-Etter website to her new website, where she continuously displayed the skyline mark on the homepage. And only a little over a year after Coleman-Etter closed, she resumed using the skyline mark on her yard signs. Thus, Taylor's rights to use the mark survived Coleman-Etter's closure.

Second, Thomas contends that any implied assignment gave Taylor no rights because trademarks must be assigned with their associated goodwill. *See id.* He says Coleman-Etter no longer had goodwill to assign after it closed under the rule of *Hunt v. Street*, 184 S.W.2d 553 (1945). But *Hunt* held only that the goodwill of a *partnership* evaporates when the partnership dissolves because of the unique nature of partnerships. *Id.* at 555. And Coleman-Etter was a solely owned corporation, not a partnership. So this argument fails.

B.

Thomas next challenges the district court's denial of his motion for judgment as a matter of law on Taylor's TCPA claim. We review that denial de novo. *Mike's Train House v. Lionel*, 472 F.3d 398, 405 (6th Cir. 2006). We view the evidence—and all reasonable inferences from that evidence—in the light most favorable to Taylor, and ask whether a reasonable jury could find in her favor. *See id.*

Thomas first argues that Taylor lacked standing to sue under the TCPA because she was not a consumer. The Act provides in relevant part: "Any person who suffers an ascertainable loss . . . as a result of . . . an unfair or deceptive act or practice. . . may bring an action individually to recover actual damages." Tenn. Code Ann. § 47-18-109(a)(1). Taylor is a "person," and therefore has standing to sue. *See* Tenn. Code Ann. § 47-18-103(13). Thomas responds that the purpose of the Act is to protect consumers, which in his view means that business competitors like Taylor do not have standing. But the Tennessee Supreme Court has held that a "person" need not be a consumer to sue under the Act. *See ATS Southeast, Inc. v. Carrier Corp.*, 18 S.W.3d 626, 628 (Tenn. 2000). So this argument fails.

Thomas next argues that Taylor failed to show an "ascertainable loss." To state a claim under the TCPA, a plaintiff must demonstrate that she suffered "an ascertainable loss of money or property . . . or any other . . . thing of value as a result" of the defendant's infringement. *See* Tenn. Code Ann. §§ 47-18-104(b), 47-18-109(a)(1). "A loss is ascertainable if it is measurable, even if the precise amount of the loss is unknown." *Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012) (internal quotation marks omitted). Ascertainable losses include both "out-of-pocket loss or a loss of value." *Id.* (internal quotation marks omitted).

A service mark, and its associated goodwill, are property with measurable value. *See* 1 McCarthy on Trademarks and Unfair Competition § 2:21 (4th ed.). A defendant harms the value of a service mark by creating confusion between the plaintiff's mark and his own. *See Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). And a plaintiff who loses the ability to control her mark loses an "intangible, but valuable . . . asset." *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 343 (6th Cir. 2010). Here, Taylor presented evidence that, since 1951, her mark had represented high-quality realtor services; that people confused Taylor's mark with Thomas's; and that Taylor lost control over her mark when Thomas used it on his signs without permission and refused to take the signs down upon Taylor's request. Thus, a reasonable jury could find that Taylor suffered "an ascertainable loss" of a "thing of value."

Finally, Thomas argues that Taylor failed to prove the amount of "actual damages" she suffered from Thomas's misuse of her service mark. To obtain an award of actual damages under the TCPA, Taylor must prove the existence of damages with certainty. *See Discover*, 363 S.W.3d at 496. Here, Taylor's evidence showed that the skyline mark had significant value in the marketplace as an indicator of her own, and Coleman-Etter's, high-quality real-estate services. A reasonable jury could find that Thomas's infringement damaged that value by, among other things, deliberately causing customer confusion. *See Wynn Oil*, 943 F.2d at 608. Thus, Taylor proved the existence of damages with certainty.

Under the TCPA, once a plaintiff proves the existence of damages from a defendant's misconduct, the "*amount* of damages may be uncertain" so long as the plaintiff "lays a sufficient foundation to allow the [jury] to make a fair and reasonable assessment of damages." *See Discover*, 363 S.W.3d at 496 (emphasis added; internal quotation marks omitted); *see also La*

*Quinta*, 603 F.3d at 342 (noting that in trademark cases the plaintiff is held to a lower standard of proof as to the damages amount).

Damages flowing from the loss of customer goodwill are typically difficult to quantify. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). In cases of trademark infringement, however, an award of royalties "normally received for the use of a mark" is often a "proper measure" of damages. *See Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986). The record supports a similar measure here. Taylor's evidence showed that real-estate agents typically pay a portion of their commissions to the firm whose mark they use. *See* R. 224 at 29; 243 at 18, 27-28; 244 at 8-12, 80-83. Taylor also showed that, by his use of the skyline mark, Thomas held himself out as a real-estate agent associated with Taylor's current and former business, *see* R. 243 at 52-53, but he did not pay Taylor any portion of his commissions for that use. Finally, she proved that Thomas earned more than $96,000 in commissions in just two months using the skyline mark. The amount that the jury awarded to Taylor on her TCPA claim ($36,500) thus represents a portion of the commissions Thomas earned while using her service mark. True, the record does not show whether that portion is the usual portion paid by an agent to the firm whose mark he uses. But in light of the somewhat relaxed standard of proof applicable to the amount (as opposed to the existence) of a plaintiff's damages under the TCPA, and drawing all reasonable inferences in favor of Taylor, we conclude that her evidence provided the jury a sufficient basis to make a fair and reasonable assessment of her damages.

## C.

Thomas also challenges the penalties the district court imposed. Thomas first argues that the court abused its discretion in awarding Lanham Act damages. *See LaQuinta*, 603 F.3d at

342. The Lanham Act provides that when a defendant infringes a service mark, a plaintiff "shall be entitled . . . subject to the principles of equity" to recover, among other things, the "defendant's profits." 15 U.S.C. § 1117(a). We assume that the defendant's profits equal his gross sales unless he presents evidence of his costs. *See Wynn Oil*, 943 F.2d at 605. Here, the court found that Thomas earned $60,770 in commissions from sales he made while deliberately infringing Taylor's mark. And Thomas did not present any evidence of his costs. Thus, the court did not abuse its discretion by awarding Taylor $60,770 for Thomas's infringement.

Thomas next argues that the district court abused its discretion in awarding attorneys' fees under the Lanham Act, *see Gnesys, Inc. v. Greene*, 437 F.3d 482, 488 (6th Cir. 2006), and in doubling Taylor's damages under the TCPA, *see Wilson v. Esch*, 166 S.W.3d 729, 731 (Tenn. Ct. App. 2004). Specifically, Thomas contends that the court erred in finding that he willfully infringed Taylor's mark. Under the Lanham Act, the district court may award reasonable attorneys' fees in "exceptional cases," which include cases of willful infringement. *Audi AG v. D'Amato*, 469 F.3d 534, 550-51 (6th Cir. 2006). Likewise, under the TCPA the court may award double or treble damages for willful violations. *See Wilson*, 166 S.W.3d at 731.

Here, Taylor presented evidence that Thomas used the skyline mark while at Coleman-Etter; that he rejected the signmakers' suggestions that he make his sign look less like Coleman-Etter's signs; that he admitted that the sign he selected was a "modified" version of the mark; that he continued to use the sign after she asked him not to; and that he ignored the advice of his attorneys to consult with intellectual-property specialists or else he would "get nailed, basically." All of this evidence supports the district court's finding that Thomas willfully infringed Taylor's service marks. Thus, Thomas has not shown an abuse of discretion.

D.

Thomas also challenges two of the district court's evidentiary rulings, and the court's decision to exclude seven of Thomas's witnesses because of his discovery violations. We review those rulings for an abuse of discretion. *Sommer v. Davis*, 317 F.3d 686, 692-93 (6th Cir. 2003).

Thomas first argues that the court erred in excluding, on relevance grounds, a document comparing Thomas's real-estate sales to Taylor's. But that document shows only that Thomas sold more houses than Taylor during a two-year period, which does not decrease the likelihood that he willfully infringed. Thus, the district court did not abuse its discretion.

Thomas next argues that the district court should have admitted examples of Taylor's marketing materials in which she did not use the skyline mark. The court allowed Thomas to question Taylor about those materials on cross-examination, however, and she confirmed that she did not always use the skyline mark to market her services. The court did not abuse its discretion in finding that the minimal probative value of this cumulative evidence was substantially outweighed by the delay and confusion it would cause. *See* Fed. R. Evid. 403.

Thomas also argues that the district court should not have excluded the testimony of seven witnesses whose identity he failed to disclose during discovery as required by Rule 26. *See* Fed. R. Civ. Proc. 26(a)(1)(A)(i). Thomas first disclosed the witnesses in his response to Taylor's motion for summary judgment, which he filed two months after discovery closed and only four months before trial. Under Rule 37(c)(1), undisclosed witnesses cannot testify at trial "unless the failure [to disclose] was substantially justified or is harmless." Thomas has not shown that his failure to disclose was either of these things. On this record, "it was not only permissible, but salutary," for the district court to require Thomas—rather than Taylor—to bear

the consequences of his violation of the rule. *See Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (internal quotation marks and punctuation omitted).

Finally, Thomas argues that the district court erred by giving a supplemental instruction which he says directed the jury to look primarily at the resemblance between the signs to determine whether people would likely confuse them. In reality, that instruction told the jury to review "carefully and deliberately" the fourteen pages of previous instructions discussing likelihood of confusion, and to "consider all of the factors in the Court's initial instructions and this supplemental instruction." *See* R. 236 at 6621. So this argument fails.

We affirm and remand for the district court to determine whether to award attorneys' fees and costs incurred by Taylor in this appeal.

**HELMICK, District Judge, concurring in part and dissenting in part.** I concur in the Court's analysis of Taylor's Lanham Act claim and affirmance of the Lanham Act damages award. I disagree, however, with the Court's conclusion that Taylor presented evidence to establish the amount of damages she suffered under the TCPA with a reasonable degree of certainty, and would vacate the TCPA compensatory and treble-damages awards.

I agree with the Court's conclusion that loss of control of a service mark is an ascertainable loss of a thing of value. Taylor testified she lost control over the service mark when Thomas refused to stop using the yard signs with the service mark on them and therefore I agree Taylor has proven the existence of damages under the TCPA. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012). I do not agree with the Court's conclusion Taylor laid "a sufficient foundation to allow the trier of fact to make a fair and reasonable assessment of [the amount of] damages." *Id.* (quoting *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 10 (Tenn. 2008)).

In her closing argument, Taylor presented, as the damages she sought, a range of $64,897 (the commissions Thomas earned from the sale of properties at which the skyline and wave signs were used) to $145,817 (the total commissions Thomas earned during the time period in which the skyline and wave signs were in the marketplace). R. 294 at 26-27. The jury subsequently awarded Taylor $36,500 on her TCPA claim, which is 25.03% of the total commissions Thomas earned during the time period. R. 241 at 4. While the Court notes that damages in trademark cases often are calculated based on the amount of royalties normally received for the use of the mark, there is no evidence in the record regarding what percentage of his commissions Thomas paid to Taylor while she was his broker.

Moreover, neither the parties nor the trial court thought this was relevant. Taylor's attorney objected to a question posed to Taylor by Thomas's attorney regarding whether Taylor got a percentage of Thomas's commissions; the trial judge sustained the objection on the basis of relevancy. R. 243 at 78. Thomas's attorney later withdrew the question at a sidebar conference. R. 243 at 81. This question should not have influenced the jury's deliberations, because the jury was instructed not to speculate as to the answer to a question to which an objection was sustained, and to assume the answer would have been of "no value" to the jury's deliberations. R. 294 at 48. Further, the record does not provide any basis for the jury to connect Thomas's commissions to the amount of damages Taylor suffered due to her loss of control of the service mark or as a result of damage to the goodwill associated with the mark.

Finally, the range of damages Taylor proposed does not correlate to the jury's findings. The jury concluded the wave sign did not constitute misuse of Taylor's service mark. Thomas received $96,017 in total commissions during the time period in which he used the skyline sign only. R. 224 at 40. He earned $43,200 in commissions on the sales of two properties at which he displayed the skyline sign. R. 224 at 35-36, 40. The jury's award is 38.01% of the total commissions Thomas earned during this time period, and 84.49% of the commissions Thomas earned at the two houses at which he displayed the skyline sign. The record does not support a connection between these commissions, the harm Taylor suffered, and the jury's damage award of $36,500. The jury's assessment of damages is not based on a reasonable degree of certainty merely because the damage award is less than the plaintiff requested.

The district court concluded Thomas's violation of the TCPA was willful and doubled the jury's damage award pursuant to Tenn. Code Ann. § 47-18-109(a)(3). The statutory authorization for this award rests upon a finding of "actual damages sustained." Because I would

vacate the jury's TCPA damage award based upon my conclusion Taylor failed to carry her burden with respect to the actual damages she suffered, I also would vacate the TCPA treble damages award.