**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0446n.06

Case No. 15-1603

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 03, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TELITHA L. CLEMENTS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| PRUDENTIAL PROTECTIVE SERVICES, | ) | MICHIGAN |
| LLC, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: SILER, ROGERS, and SUTTON, Circuit Judges.

**SILER**, Circuit Judge. A jury found that Prudential Protective Services, LLC ("Prudential"), violated former employee Telitha Clements's rights under the Family and Medical Leave Act ("FMLA"). In addition to the damages the jury awarded, the district court granted Clements pre- and post-judgment interest, liquidated damages, attorneys' fees, and costs. On appeal, Prudential argues that one of its witnesses was improperly excluded, that Clements's counsel misrepresented certain testimony during closing arguments, that liquidated damages should not have been granted, and that the district court awarded unreasonable attorneys' fees. For the reasons explained below, we **AFFIRM**.

I.

For a number of years, Clements worked as a security guard in the New Center buildings—a complex located in Detroit—and was supervised by Lamont Lively. In 2006, Prudential, a security services provider, became Clements's employer. In 2009, Clements was

pregnant with her second child. Through Lively, she took leave in late May 2009, and the child was born in early June 2009. Six weeks later, Clements attempted to contact Lively to return to work, but he was absent. When she reached him, he informed her that there were no openings available for a position at the New Center buildings because of a reduction in the number of employees assigned there. Because she had not been able to return to work, she applied for unemployment benefits in July 2009, and, in June and July of 2009, she requested and obtained a completed leave of absence form from Prudential so that she could receive credit card insurance benefits. In August, however, Prudential did not provide the form and, instead, tendered a letter stating that Clements had been laid off.

After receiving a right-to-sue letter from the EEOC, Clements filed this action in 2011, claiming, among other things, that Prudential's actions interfered with her FMLA rights. The district court granted summary judgment in favor of Prudential, but this court unanimously reversed. *Clements v. Prudential Protective Servs., LLC*, 556 F. App'x 392, 396 (6th Cir. 2014). After a trial, a jury returned a verdict in favor of Clements and awarded her $31,000.00 in compensatory damages.

Following the verdict, Clements moved for attorneys' fees, costs, pre-judgment interest, post-judgment interest, and liquidated damages. The district court awarded $2,617.90 in pre-judgment interest; $31,000.00, plus interest, in liquidated damages; $77,233.50 in attorneys' fees; and $4,228.43 in costs. The court also awarded post-judgment interest at 0.23%. This appeal followed.

## II.

On appeal, Prudential raises four arguments. First, it claims that the trial court erred in excluding a witness. Second, Prudential contends that the district court should have instructed

the jury that a discussion of portions of Lively's testimony by Clement's counsel during closing arguments was incorrect. Third, Prudential maintains that the attorneys' fee award was excessive. Fourth, Prudential argues that the district court should not have awarded liquidated damages. None of these arguments provides a basis for reversal.

A.

1.

At trial, Prudential attempted to call Jodi Hohman, the owner and manager of another security company, to the stand to testify that, "given [Clements's] experience and skill level in the security business, . . . she would have been very easily employable had she sought out security work." However, Prudential did not disclose Hohman as a potential witness in the company's pre-trial witness list. Nonetheless, Prudential claimed that Hohman could be admitted as a "rebuttal witness" on the issue of mitigation, in response to Clements's testimony "that she was seeking out work." After explaining that evidence Prudential offered during its case-in-chief would not be "rebuttal" evidence, the district court found that Hohman could not testify as a rebuttal witness unless Clements's counsel reopened the issue of mitigation after Prudential presented its case. On appeal, Prudential contends that the trial court erred in this decision.

2.

We generally review a district court's evidentiary rulings, including its decision to exclude an untimely disclosed witness, for abuse of discretion. *See U.S. ex rel. TVA v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016) (citing *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010)).

3.

Rule 26(a)(3)(A)(i) of the Federal Rules of Civil Procedure requires each party, as a part of its pretrial disclosures, to provide the "the name . . . of each witness," including "those the party expects to present and those it may call if the need arises," unless the witness is offered "solely for impeachment." Rule 37 dovetails with this requirement: "If a party fails to . . . identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Taylor v. Thomas*, 624 F. App'x 322, 329 (6th Cir. 2015).

Prudential claims that Hohman should have been permitted to testify—even though she had not been disclosed on Prudential's witness list—"as a rebuttal witness regarding [Clements's] employability in the security industry" because, during her case-in-chief, Clements "testified as to the alleged lengths she went to obtain employment." According to Prudential, Hohman's testimony would have shown that "had [Clements] applied for employment with another security company, she would likely have been employed immediately." As a result, Prudential contends, had Hohman testified, "the jury would have returned a verdict far less than $31,000.00 by noting that [Clements] failed to properly mitigate her own damages."

Even assuming (as the parties have) that a rebuttal witness need not be disclosed before trial, Prudential has not shown that the district court abused its discretion. "Parties are 'expected to present all of their evidence in their case in chief,' and '[a]llowance of a party to present additional evidence on rebuttal depends upon the circumstances of the case.'" *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 461 (8th Cir. 2015) (alteration in original) (quoting *Gossett v. Weyerhaeuser Co.*, 856 F.2d 1154, 1156 (8th Cir. 1988)). Though Prudential nominally referred to Hohman as a "rebuttal witness," it sought to introduce her testimony as part of its case-in-

chief. The district court did not permit this because Prudential failed to disclose Hohman as a witness, but the court specifically left open the possibility that Prudential could introduce Hohman as part of any sur-rebuttal proof if Clements chose to make a rebuttal. Prudential has cited no authority suggesting that a party may introduce "rebuttal" evidence during its case-in-chief.

Additionally, Prudential nowhere argues that Hohman's testimony was offered for impeachment purposes and was therefore not subject to pretrial disclosure under Rule 26(a)(3)(A)(i). Because the argument was not raised before the district court, we need not decide whether Prudential could have offered Hohman's testimony solely to impeach Clements's claims that she sought out other jobs and that she applied to many jobs online.

B.

1.

During Clements's case-in-chief, her counsel called Lively to the stand. Among other things, Lively provided the following testimony:

> Q:      At the time that Ms. Clements went on maternity leave, would you have been sending her to the office for reassignment[,] or did you want her to stay with you?
>
> A:      She would have c[o]me back if I had an opening.
>
> Q:      You weren't—she's not someone you would have intended to lay off while she was on maternity leave?
>
> A:      No.

During closing arguments, Clements's counsel stated, "The last question I asked [Lively] and his last answer was [Clements] would not have been laid off if she had not been on maternity leave."

Prudential objected, but the district court found that Clements's attorney did not mischaracterize Lively's testimony after reviewing the record. On appeal, Prudential claims that the district court erred by failing to "instruct[] the jury as to the nature of Mr. Lively's exact testimony."

2.

We afford a trial court's determination of "whether improper comments prejudiced the jury" a "high level of deference"; therefore, we review such determinations with a particularly "high standard" of review. *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 589–90 (6th Cir. 2015) (quoting *Balsley v. LFP, Inc.*, 691 F.3d 747, 762 (6th Cir. 2012)).

3.

To prevail on this claim, Prudential "must show 'a reasonable probability that the verdict of the jury has been influenced' by the improper conduct of [Clements]'s counsel." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 315 (6th Cir. 2016) (quoting *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 542 (6th Cir. 2014)). Accordingly, courts regularly refuse to grant a new trial based on statements made during closing argument "because the conduct complained of, under the circumstances, was not misconduct, because it was not prejudicial, . . . or because any prejudice was cured by the instructions of the court." 11 Charles Alan Wright, et al., *Federal Practice & Procedure* § 2809 (3d ed. 2016) (footnotes omitted); *see also, e.g.*, *CFE Racing*, 793 F.3d at 590.

Prudential argues that "there can be little doubt that [Clements's counsel's] statements to the jury were incorrect and not consistent with Mr. Lively's testimony." But Prudential fails to explain exactly why. As the district court concluded, the disputed portion of Clements's counsel's closing argument was a fair—but not the only fair—interpretation of Lively's

testimony. Considering the context of the case, counsel's questioning of Lively aimed to determine whether Lively would have laid Clements off had she not been on maternity leave. Perhaps the questioning could have been clearer, but counsel's closing argument did not cross the line between permissible argument and mischaracterization.

Even if counsel's statements *were* impermissible, however, Prudential has not shown to a reasonable probability that these statements influenced the jury's verdict. Where a trial court instructs the members of the jury that they should not consider counsels' arguments as evidence, the party seeking to overturn the verdict must "show[] that th[e] curative instruction was insufficient to overcome any prejudice resulting from . . . allegedly improper statements." *Farley v. Country Coach Inc.*, 403 F. App'x 973, 983 (6th Cir. 2010). Here, the district court instructed the jury—both at the beginning and the end of the trial—that it was to decide the case on the evidence presented in court and that statements made during closing arguments are not evidence. Prudential has neither explained why these instructions were insufficient nor provided any reason to suspect that the jury would be unable to follow them.

Accordingly, reversal is not warranted on these grounds.

## C.

### 1.

Following trial, Clements moved for an award of liquidated damages, attorneys' fees, costs, and interest. In calculating attorneys' fees, the district court used the familiar lodestar approach, finding that "the 391 [attorney and paralegal] hours for which [Clements] seeks fees is well within the realm of reasonableness" and that the rates for each attorney and paralegal were within reasonable market range. However, Clements pursued unsuccessful sex and pregnancy discrimination claims in addition to her FMLA claim. The attorneys' records did not isolate the

work performed on these claims, and Clements abandoned the claims after discovery uncovered little support for them. Nonetheless, some work was performed in relation to the discrimination claims. After weighing the circumstances of the case, the district court applied a global 10% reduction to the lodestar amount and awarded Clements $77,233.50 in attorneys' fees.

2.

We generally review the grant of attorneys' fees under FMLA for abuse of discretion. *Bell v. Prefix, Inc.*, 565 F. App'x 498, 500 (6th Cir. 2013) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008)).

3.

Under FMLA, the district court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee . . . to be paid by the defendant." 29 U.S.C. § 2617(a)(3). "[T]he plain language of § 2617(a)(3) mandates the award of attorneys' fees only when the plaintiff has proved that the defendant violated the FMLA." *Bond v. Abbott Labs.*, No. 98-3923, 1999 WL 717977, at *4 (6th Cir. Sept. 9, 1999) (per curiam). In FMLA actions, the standard method of calculating reasonable attorneys' fees in the Sixth Circuit applies. *See Bell*, 565 F. App'x at 500. The court must first calculate the lodestar amount by "multiplying the reasonable number of hours billed by a reasonable billing rate" in the relevant community. *Id.* (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). Then, the court may adjust the lodestar amount by applying the twelve-factor test set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Bell*, 565 F. App'x at 500. The relevant factors include:

> (1) the time and labor required by a given case;
> (2) the novelty and difficulty of the questions presented;
> (3) the skill needed to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Reed*, 179 F.3d at 471–72 n.3 (citing *Johnson*, 488 F.2d at 717–19). The most critical factor is "the degree of success obtained." *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

On appeal, Prudential raises arguments only as to the first, sixth, and eighth factors. Prudential claims that "the time and labor submitted in this case by [Clements] is unreasonable for several reasons," that the fact that Clements's counsel accepted the case on a contingency basis "suggests that the office will be compensated twice for the same representation," and that the jury only awarded Clements less than half of the damages requested at trial.

Taking these contentions out of order for analytical purposes, Prudential's arguments as to the sixth and eighth factors lack merit. As for Prudential's claim that Clements's attorneys would receive double compensation for their work, Clements's counsel responds that—even assuming that a fee award could be reduced on this basis—its agreement with Clements provides for a fee of one third of the amount recovered, and any attorneys' fee award would be included in the total amount recovered. As the trial court noted, however, the fee agreement is not part of the record. The Supreme Court has held that a fee award should not be reduced or limited in every matter in which counsel represents the plaintiff on a contingency basis. *See Blanchard v. Bergeron*, 489 U.S. 87, 93–96 (1989). Therefore, the district court did not abuse its discretion by declining to credit Prudential's pure speculation that Clements's attorneys would be

compensated twice—an argument that, if accepted without factual support, could apply to *any* contingent fee agreement. As for the claim that the district court should have reduced the fee award because the jury returned a verdict for less than half of the damages Clements claimed at trial, Prudential has not shown an abuse of discretion. The district court is particularly well situated to determine whether a fee is reasonable given the nature and scope of the plaintiff's success on the merits. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the court considered the amount requested at trial—along with the history of the case's settlement negotiations—and the amount Clements ultimately received. It concluded that, especially when considering the liquidated damages award, the amount obtained did not warrant a reduction in fees. Moreover, at the hearing on the motion for fees, the court found that the results Clements's counsel obtained were "right on the button for the value of the case" and that the amount of time expended by Clements's attorneys was reasonable in light of this result, especially considering the previous appeal. The district court has "ma[d]e clear that it . . . considered the relationship between the amount of the fee awarded and the results obtained" in reaching its conclusion, *Hensley*, 461 U.S. at 437, and Prudential has not shown that the court abused its discretion in doing so.

Prudential also raises several arguments under the first *Johnson* factor, maintaining that the time and labor that Clements's counsel expended on the case was unreasonable.

Though Prudential claims that Clements "was represented by approximately [five] different attorneys in this case— evidencing likely duplicative work"—a review of the billing records shows that no more than two attorneys worked on Clements's case at any given time. Also, as the district court recognized, the billings for interoffice communications and meetings

among the attorneys were not necessarily duplicative or unnecessary. Likewise, the fact that two attorneys billed for attending the mediation does not demonstrate duplicative billing.

Prudential's citation to the record does not support its claim that Zachary Hallman "was not licensed to practice in the Eastern District [of Michigan] during the course of this case." Hallman was admitted to practice law in May 2014, and he began working on the case in June 2014. He entered a notice of appearance on January 1, 2015, using his own CM/ECF account. At the latest, Hallman would have been required to be admitted to practice before the Eastern District before receiving a CM/ECF account. *See ECF Registration Requirements and Steps for Issuance of a Login and Password*, United States District Court for the Eastern District of Michigan, https://www.mied.uscourts.gov/attorneyregistration/ARprocess.cfm (last visited June 22, 2016). The record appears to be silent as to whether Hallman was admitted to the Eastern District at the time of trial, in November 2014. But the matter was brought to the district court's attention, and the court did not see fit to exclude Hallman's time from the lodestar amount. "District courts have broad discretion in interpreting, applying, and determining the requirements of their own local rules," *Pearce v. Chrysler Grp., L.L.C. Pension Plan*, 615 F. App'x 342, 349 (6th Cir. 2015), and courts may choose to overlook instances where parties do not "perfectly comply" with local rules—at least in the absence of prejudice, *Hoogerheide v. IRS*, 637 F.3d 634, 639 (6th Cir. 2011). Because Prudential has not claimed that it was prejudiced by Hallman's actions and because Prudential's arguments do not speak to the quality or reasonableness of the work Hallman performed, the district court did not abuse its discretion in awarding fees for Hallman's work.

Prudential also contends that the fees awarded were unreasonable because Clements "is seeking to receive a windfall . . . for pre-appeal attorney[s'] fees." According to Prudential,

Clements's "position in this case demanded that the defense proceed with a motion for summary judgment," so Clements "should not be entitled to any attorney[s'] fees prior to the [Sixth Circuit's] entering its order for remand." This argument is confounding at best. Yes, Prudential filed a motion for summary judgment, and yes, the district court granted this motion. But our court found that the motion should *not* have been granted and reversed. *Clements*, 556 F. App'x at 396. It is hard to imagine how the actions of Clements's counsel could have required Prudential to file a motion for relief to which it was not entitled. And it is even harder to imagine that Clements's attorneys would not be entitled to compensation for the hours they spent litigating the case through the summary judgment stage and pursuing a successful appeal.

Prudential also claims that Clements should not be able to recover fees for the time her attorneys spent pursuing fees. On the contrary, the time an attorney spends in attaining a fee award is generally compensable under federal fee-shifting statutes. *Ne. Ohio Coal. for the Homeless v. Sec'y of Ohio*, 695 F.3d 563, 573–74 (6th Cir. 2012). While the amount of the fees-for-fees award appears to have slightly exceeded the cap of "5% of the hours in the main case" that applies "when a trial is necessary," *see id.* (quoting *Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986)), Prudential has not raised this issue. Therefore, the matter has been forfeited.

Finally, Prudential claims that Clements should not have received fees related to drafting a motion in limine. The joint pretrial order indicates that Clements "intend[ed] to file a [m]otion in [l]imine requesting the exclusion of [her] EEOC claim/file documents." Clements's counsel submitted $1,263.50 in entries for preparing the motion, but it was never filed. The trial transcript shows that the parties ultimately "stipulated to exhibits" with some exceptions. At trial, Clements argued that certain evidence contained in the EEOC document should not be

admitted, and she prevailed on this issue. Under these particular circumstances, preparing the motion in limine benefitted Clements at trial and thus was not an unreasonable expense.

D.

1.

The district court also awarded Clements $31,000.00, plus interest, in liquidated damages under FMLA. After applying a presumption in favor of liquidated damages, the court found that Prudential did not overcome this presumption because it could not establish that it subjectively operated in "good faith . . . to ascertain the dictates of . . . FMLA and to act in conformance with it." Moreover, the court found that Prudential had not shown that it had objectively reasonable grounds to believe that its actions complied with FMLA.

2.

We review a district court's decision to award liquidated damages for abuse of discretion because of "the strong presumption" under FMLA "in favor of doubling [the damages]." *Thom v. Am. Standard, Inc.*, 666 F.3d 968, 973 (6th Cir. 2012) (alteration in original) (quoting *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002)).

3.

Under 29 U.S.C. § 2617(a)(1)(A)(iii),

[a]ny employer who violates [FMLA] shall be liable to any eligible employee affected . . . for . . . liquidated damages equal to the sum of the amount [of lost compensation and other actual monetary losses resulting from the violation] and the interest [on that amount calculated at the prevailing rate], except that if an employer who has violated [FMLA] proves to the satisfaction of the court that the act or omission which violated [FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of [FMLA], such court may, in the discretion of the court, reduce the amount of the liability to the amount [of lost compensation and actual monetary losses] and interest.

Therefore, "liquidated damages are the norm in cases where an employer violates" FMLA, and the district court may decline to award liquidated damages only where the employer "show[s] *both* good faith *and* reasonable grounds for the act or omission." *Hyldahl v. Mich. Bell Tel. Co.*, 503 F. App'x 432, 441 (6th Cir. 2012) (quoting *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 827 (6th Cir. 2002)).

On appeal, Prudential claims that it did, in fact, "have a good faith belief that it had not violated . . . FMLA." To support this position, Prudential primarily contends that Clements was not prejudiced by any FMLA violation. Because the district court initially agreed that Clements did not suffer prejudice on account of any FMLA violation, Prudential argues that it "did have a good faith belief and reasonable grounds [to believe] that it had not violated . . . FMLA." Prudential maintains that "the [d]istrict [c]ourt . . . made a previous ruling that [Prudential] had not committed a violation of . . . FMLA and then made an opposite ruling, finding that the violation was not in good faith or reasonable." Presumably, Prudential believes that the district court's alleged contradiction of its own prior ruling was an abuse of discretion.

Prudential's argument is flawed on at least two grounds. First, the district court was not required to credit its prior determinations that were overturned on appeal. *See Mason v. Mitchell*, 729 F.3d 545, 550 (6th Cir. 2013) ("[T]he trial court must proceed in accordance with the mandate and the law of the case as established on appeal." (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 549 (6th Cir. 2004))). Second, and more importantly, Prudential's reasoning confuses the standard for liquidated damages. As discussed above, an employer can overcome liquidated damages only if the employer shows that its actions were in good faith and that it had reasonable grounds for believing that its actions did not violate FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). Prudential has repeatedly stated that its defense was *not* that its actions

comported with its FMLA obligations. Rather, it claimed that Clements was not *prejudiced* by any FMLA violation. But whether an employer violated its FMLA obligations is a separate and distinct inquiry from whether the plaintiff was prejudiced by the violation. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

The prejudice requirement for sustaining a private cause of action under FMLA is derived from § 2617. *Ragsdale*, 535 U.S. at 89. Section 2617, which governs civil FMLA actions brought by employees, only provides a remedy for losses an employee sustains "by reason of the [employer's FMLA] violation" or "as a direct result of the violation." 29 U.S.C. § 2617(a)(1)(A)(i); *see also Ragsdale*, 535 U.S. at 89. The liquidated damages provision, contained in the same section, refers back to § 2615: "[I]f an employer who has *violated section 2615* . . . proves . . . that the act or omission *which violated section 2615* . . . was in good faith and that the employer had reasonable grounds for believing that the act or omission *was not a violation of section 2615*," the court may decide not to award liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(iii) (emphasis added). But § 2615 does not include a prejudice requirement. *See Ragsdale*, 535 U.S. at 89. It instead provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, *any* right provided under" FMLA. 29 U.S.C. § 2615(a)(1) (emphasis added). Simply put, FMLA's liquidated damages provision does not provide a defense for employers that merely believed—reasonably or otherwise—that their actions would not cause prejudice. The employer must have had a good-faith, objective belief that its actions were consistent with FMLA's technical requirements. Stated differently, "[t]o establish good faith under the FMLA, a defendant must show that 'it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it.'"

*Thom*, 666 F.3d at 977 (quoting *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 868 (8th Cir. 2006)). Accordingly, Prudential's contention that liquidated damages were unwarranted because of a lack of prejudice is meritless.

Prudential also briefly contends that, prior to this case, it had never been sued for violating FMLA, that Clements had previously taken FMLA leave, and that at least fifty employees a year took time off from work for family-related matters. According to Prudential, these facts show that it "was acting under a presumption that it had not violated . . . FMLA." Even accepting these facts as true for the sake of argument, they do not undermine the trial court's main rationale: Prudential did not act reasonably in attempting to ascertain its FMLA obligations. The district court considered in detail the testimony of Patricia Guzik, Prudential's owner. Although Guzik testified that Prudential had never been sued under FMLA, that at least fifty employees went on family-related leave each year, and that Clements had previously taken pregnancy leave, the district court found that Guzik did not have a satisfactory answer when confronted with evidence that supervisors had not been trained in FMLA. The district court also relied on Lively's testimony that he had not been provided FMLA training and the admission of Matthew Keywell, a Prudential human resources executive, that Prudential did not provide FMLA training to its managers or employees. Because Prudential's argument on this point does not meaningfully address the district court's conclusion that the company did not act reasonably in attempting to ascertain FMLA's requirements, it has failed to show that the district court abused its discretion in awarding liquidated damages.

**AFFIRMED**.[1]

---

[1] Clements "prays that this [c]ourt award her reasonable attorneys' fees and costs for having to defend this patently frivolous appeal." While Prudential's arguments are without merit, we do not deem them to be frivolous.